M. W. MEEKER, Appellee, v. BESSIE MAE KAUTZ et al., Appellants.

No. 40773.

NOVEMBER 17, 1931.

C. R. Stafford and J. G. Kammerer, for appellants.

G. Allbee and Nichols, Tipton & Tipton, for appellee.

ALBERT, J.—The real estate in controversy herein consists of two small islands in the Mississippi River on the Iowa side of the thread of the stream. Plaintiff asserted title thereto by reason of a patent issued by the State of Iowa to one Burmeister, who later conveyed title to the plaintiff.

The defense is a general denial, and a cross-petition in which defendants assert title to these two small islands by reason of accretion to a larger island to which latter larger island the defendants had undisputed title. The defendants also asserted that plaintiff's patent was void and contrary to law and procured through fraud in contravention of the statutes of Iowa.

In the case of United States v. Stone, 2 Wall. (U. S.) 525, 17 L. Ed. 765, the Supreme Court of the United States says:

"A patent is the highest evidence of title, and is conclusive as against the government, and all claiming under junior patents or titles, until it is set aside or annulled by some judicial tribunal."

See also Johnson v. Towsley, 13 Wall. (U. S.) 72, 20 L. Ed. 485; Moore v. Robbins, 96 U. S. 530, 24 L. Ed. 848; St. Louis Smelting & Refining Co. v. Kemp, 104 U. S. 636, 26 L. Ed. 875. These cases are all to the point that a patent regular on its face cannot be collaterally attacked. To the same effect see McCarter v. Sooy Oyster Co., 75 Atl. (N. J.) 211; Sooy Oyster Co. v. Gaskill, 69 Atl. (N. J.) 1084; Horton v. Bauer, 29 N. E. (N. Y.) 1, l. c. 4; Malloy v. Benway, 75 Pac. (Wash.) 869; Baker v. Newland, 25 Kans. 25; Palmer v. Boorn, 80 Mo. 99; Ferry v. Street, 11 Pac. (Utah) 571; McKinney v. Bode, 23 N. W. (Minn.) 851; State ex rel. Marsh v. State Board of Land Comrs., 53 Pac. (Wyo.) 292. See also 45 C. J. 554, sec. 238.

It is apparent, therefore, under this line of authorities that the defendant cannot collaterally attack the patent title derived from the State of Iowa in this case. Also, under the above cases, the issuance of a patent by the state is an assertion of the existence of the property there conveyed. The objections made to the patent title of the plaintiff are not available to the defendants in this case.

The fact situation, so far as we are able to determine it from the record, is that at all times in controversy herein, the defendants were the owners of the legal title to what is known as "Island No. 3" in the Mississippi River on the Iowa side. This island originally, according to the government survey, contained over 29½ acres, and is known in the record as "Hog Island." By reason of certain accretions, said island extended in a southwesterly direction, and at the time of the trial contained about 62.25 acres. The two tracts of land in dispute lie in a northwesterly direction from the lower end of said island, and according to one plat contain respectively 0.62 and 0.99 acres of land. According to plaintiff's contention they contain respectively 1.04 and 0.57 acres.

This case, being in equity, is triable de novo in this court, and we are not favored in the abstract, by way of certification of exhibits, with the three different plats introduced in the lower court. Without them we can not get a very intelligent idea of

the situation of the relations of these pieces of property to each other.

It is apparent by reason of the defendants' cross-petition that the burden is upon them to establish that these two small islands are their property by reason of the doctrine of accretion, and if they have failed so to do, they are not entitled to any relief under said cross-petition. The record consistently shows that the normal state of water in the Mississippi River at the times in controversy was about eight feet. The record also consistently shows that when the water in the river was at a height of 6.8 feet these two small islands were separated from each other and from Hog Island by different stretches of water of different depths ranging from 3.8 to 6.4 feet. We reach the same conclusion as did the district court that under this record, these two small islands are not a part of Island No. 3 by accretion, but are still a part of the river bed, and, therefore, were the property of the State. See Holman v. Hodges, 112 Iowa 714; Payne v. Hall, 192 Iowa 780.

The doctrine of accretion is quite well established and recognized in this State. To constitute an accretion there must be a gradual and imperceptible addition of soil to the shore line by the action of the water to which the land is contiguous. Bigelow v. Herrink, 200 Iowa 830, and Holman v. Hodges, supra. This rule applies to land added to islands, as well as to the mainland. Bigelow v. Hoover, 85 Iowa 161; Tiffany's Real Property (2d Ed.) Vol. 2, section 542.

The title to accreted lands does not vest in the riparian owner of the land bordering on a navigable stream until the surface of such accretion rises above the ordinary high-water mark. City of Cedar Rapids v. Marshall, 199 Iowa 1262; Bennett v. National Starch Mfg. Co., 103 Iowa 207. In the case of City of Cedar Rapids v. Marshall, supra (p. 1264), this court said:

"The term 'ordinary high-water mark' has been frequently defined by this and many other courts. It is not the line reached by unusual floods, but it is the line to which high water ordinarily reaches. In Carpenter v. Board of Com. of Hennepin County, 56 Minn. 513 (58 N. W. 295) it is said: ' "High-water mark" means what its language imports,—a water mark. It is coordinate with the limit of the bed of the water; and that, only,

is to be considered the bed which the water occupies sufficiently long and continuously to wrest it from vegetation, and destroy its value for agricultural purposes.' This was approved by us in Bennett v. National Starch Mfg. Co., 103 Iowa 207. In that case we said: 'Soil which is submerged so long or so frequently, in ordinary seasons, that vegetation will not grow upon it, may be regarded as part of the bed of the river which overflows it.' "

It is apparent from these quotations from our own court that to find these two small islands to be accretions to the larger island No. 3, it must first be shown that they were added to the same by gradual, imperceptible addition of the soil to the shore line of Island No. 3, and when the water in the river was at the point referred to in the authorities as "ordinary high-water mark," the surface of the two small islands and of Island No. 3 would show that the lands were at that time connected with each other.

Defendants have failed to prove this condition of affairs, and the record before us shows that when the water in the Mississippi River is at its ordinary state of 8 feet in depth, the three islands are not apparently on the surface connected with each other, and if this be true at that stage of the water, it must necessarily follow that they are not perceptibly connected as dry land when the water in the river is at high-water mark.

Lastly, it is contended that under the description contained in the patent, only a certain part of these two small islands is covered by the patent. Having held that the defendants failed to show they had any interest in or right to either of these two small islands, it becomes immaterial, so far as they are concerned, whether or not the patent correctly described these two small islands.

Plaintiff having made a *prima facie* case in the first instance showing his right to have the title to these two small islands quieted in him, and defendants not having overcome such *prima facie* case, it necessarily follows that the plaintiff was entitled to the relief demanded, which conclusion is in accord with the result reached by the district court.—Affirmed.

FAVILLE, C. J., and STEVENS, DE GRAFF, and WAGNER, JJ., concur.